CLERK OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
June 08, 2026

LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
         DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| Alasia Fletcher, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:25-cv-00059 |
| | ) | |
| Eric Aldridge *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff Alasia Fletcher, an inmate at a women's correctional facility in Virginia, brings this suit against prison officials for failing to protect her during and after she was allegedly raped and later physical assaulted by two other inmates. Fletcher claims that the officials violated her Eighth Amendment rights and were grossly negligent. Defendants argue that Fletcher fails to state a claim against them.

This matter is before the court on Defendants' motion to dismiss Fletcher's complaint. (Dkt. 13). For the reasons stated below, the court will grant in part and deny in part Defendants' motion.

### I.      Background

#### A.  Factual History[1]

Plaintiff Alasia Fletcher is incarcerated at the Fluvanna Correctional Center for Women ("FCCW"). (Am. Compl. (Dkt. 9) ¶ 4.) On July 20, 2023, Fletcher was raped by two other

---

[1] The facts alleged in Fletcher's amended complaint and supporting exhibits are accepted as true when evaluating whether the complaint states a claim upon which relief may be granted. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016).

inmates at FCWW, Tyquesha Angina Hargrave and Dakerie Jeanne Daniels. (*Id.* ¶¶ 23–24.) The rape lasted over ten minutes, and Fletcher is now unable to have natural bowel movements as a result. (*Id.* ¶¶ 24–25.) According to Fletcher, Defendants knew that she had been a target of "gang violence" before the rape and that Hargrave and Daniels "had a history of working together to violently assault and otherwise terrorize inmates." (*Id.* ¶¶ 28–30.)

"Soon after it occurred," Fletcher reported the rape to Defendant Demetria Barbour. (*Id.* ¶ 40.) After she was raped, Fletcher had "bec[o]me depressed, lost weight, and began self-harming," and she brought up the rape with Barbour as they were discussing Fletcher's change in demeanor and appearance. (*Id.*) Fletcher "expressed reasonable fear" of Hargrave and Daniels and "ongoing terror . . . that she would be victimized again without any protection" from FCCW staff. (*Id.* ¶¶ 40, 50.) In response, Barbour told Fletcher that "God would give her justice and to keep her head held high." (*Id.* ¶ 40.) Barbour took no further action. (*Id.*)

Virginia Department of Corrections ("VDOC") Operating Procedure 866.1 provides, pursuant to the Prison Rape Elimination Act, that:

> Staff must accept all inmate allegations of sexual abuse and sexual harassment reported through the informal complaint process and must immediately report any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment to the Facility Unit Head and the PREA Compliance Manager.

(*Id.* ¶ 41; Dkt. 1-3 at 6.) Despite this policy, Barbour did not report the rape to anyone at FCCW or VDOC and did not instruct Fletcher to report the rape to anyone else. (*Id.* ¶ 41.) Barbour took no measures to protect Fletcher from Hargrave and Daniels despite knowing that they were all housed in the same unit. (*Id.*)

On September 24, 2023, Hargrave and Daniels broke Fletcher's left hand in two places. (*Id.* ¶¶ 42, 51.)  Fletcher's hand was blue and cold to the touch by the time she was transported to the emergency room, and she continues to experience pain in the hand.  (*Id.* ¶¶ 54, 56.) Two days later, after Fletcher had returned from the hospital, another inmate wrote a statement about the abuse by Hargrave and Daniels on Fletcher's behalf and delivered it to Defendant Virginia Woodson.  (*Id.* ¶ 43.)  Upon receipt, Woodson "immediately requested [Fletcher] come up in person and tell her the story herself."  (*Id.*)  Fletcher did so and recounted the rape and subsequent assault to Woodson.  (*Id.*)  During the story, according to Fletcher, Woodson turned off her body-worn camera.  (*Id.*)  Woodson then "immediately walked [Fletcher] to the office of Defendant Clarrissa Jackson, the head of investigations at FCCW." (*Id.* ¶ 44.)  Fletcher again recounted the rape, this time to Jackson.  (*Id.*)

On the same day that Fletcher reported the rape and broken hand to Jackson and Woodson, Hargrave and Daniels were placed in administrative segregation.  (*Id.* ¶ 45.)  Sixteen days later, on October 13, 2023, they were released.  (*Id.*)  According to Fletcher, "no comprehensive investigation [was] completed" in the interim, since no one from the Special Investigations Unit ("SIU") spoke with her or any of the witnesses she had named and "VDOC and FCCW staff did not seek to meaningfully collect and preserve evidence and testimony related to [Fletcher's] violent rape as required by the PREA."  (*Id.* ¶¶ 45, 49.)  At some point between September 26 and October 25, 2023, FCCW staff approved a Keep Separate order and Hargrave and Daniels were separated from Fletcher's housing unit.  (*Id.* ¶¶ 59, 63.)

VDOC Operating Procedure 038.3 provides that all inmates "who report sexual abuse or sexual harassment . . . will be protected from retaliation by other staff [and] inmates." (*Id.* ¶ 57; Dkt. 1-4 at 18.) And Operating Procedure 830.6 instructs staff, after a Keep Separate order has been entered, to "always keep inmates approved for Keep Separate status separated and should not place them in the same institution except at Security Level 5 and Security Level S institutions." (Am. Compl. ¶ 62; Dkt. 1-7 at 6.) From October 2023 to June 2024, Fletcher reported retaliation by Hargrave and Daniels and violations of the Keep Separate order to FCCW and VDOC staff both verbally and through the written grievance process. (*See* Am. Compl. ¶¶ 58, 63–86.) Among the recipients of these complaints were Defendants Jackson, Valencia Hucks, Andre Thomas, Tameka Elliott, Janet Jamerson, and Eric Aldridge. (*See id.*)

In each instance, Fletcher complained of the prison officials' collective failure to keep Hargrave and Daniels sufficiently separated from her. Specifically, she noted that she saw Hargrave in the same building as her twice, (*id.* ¶ 64, 77); she repeatedly saw and was verbally berated by Hargrave or Daniels while outside, (*id.* ¶¶ 65–67, 73, 80); she heard that Hargrave snuck out of her assigned building, (*id.* ¶ 68, 76); she encountered Daniels at her work assignment, (*id.* ¶ 69, 79); Hargrave threatened her through another inmate, (*id.* ¶ 70); and Hargrave attempted to spit on her, (*id.* ¶ 71).

Staff at FCCW or VDOC, including Defendants Jackson and Aldridge, generally rejected these grievances, noting that the Keep Separate order—mandating that Fletcher be separated in "housing wing, program, [and] class" from Hargrave and Daniels—was followed, that "accidental meeting cannot be controlled," that there were sufficient staff outside and in

work areas to "ensure" Fletcher's safety, that video footage did not show the alleged attempted assaults, that Fletcher was being monitored for retaliation risk, that the alleged incidents were being looked into, and that a PREA investigation was ongoing as to the initial rape. (*Id.* ¶¶ 63–67, 69–80.)

Additionally, on June 14, 2024, Fletcher submitted a complaint alleging that Hargrave kicked her in the shin as they passed by each other in the medical building. (*Id.* ¶ 81–82). On the same day, she submitted another complaint about continued harassment and abuse by Hargrave. (*Id.* ¶ 83.) After receiving written responses from staff, Fletcher elevated her complaint to a Regular Grievance on June 28, 2024. (*Id.* ¶ 86.) Aldridge's subsequent response noted: "This matter has been investigated by SIU and was not deemed to be a PREA incident . . . . I find your grievance to be UNFOUNDED." (*Id.*; Dkt. 1-11 at 6–7.) Later in September, a VDOC Regional PREA Analyst noted that the above language "should never have been stated or provided" because this was a PREA grievance and "they did not investigate the allegation." (Am. Compl. ¶ 87; Dkt. 1-11 at 1.)

### B. Procedural History

Fletcher filed a lawsuit in this court on July 18, 2025. (Dkt. 1.) On October 8, 2025, she filed an amended complaint. (Dkt. 9.) Defendants filed a motion to dismiss, (Dkt. 13), and an accompanying brief, (Def.'s Br. (Dkt. 14)), on November 20, 2025. Fletcher responded in opposition on December 4, (Pl.'s Resp. (Dkt. 18)), and Defendants filed a reply on December 15, 2025, (Def.'s Reply (Dkt. 21)).

## II.    Standard of Review

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  They do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)).  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In reviewing a motion to dismiss for failure to state a claim, "a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Bing*, 959 F.3d at 616.

## III.    Analysis

Fletcher alleges four counts against various Defendants under federal and state law.  In Count I, Fletcher alleges that Defendants Barbour, Jackson, Hucks, Thomas, Elliott, Woodson, and Jamerson ("the Officials") violated the Eighth Amendment by failing to protect her from Hargrave and Daniels.  (Am. Compl. ¶¶ 89–119.)  In Counts II and III, Fletcher alleges that Aldridge violated the Eighth Amendment by failing to protect her from Hargrave and Daniels and by failing to adequately train the FCCW staff.  (*Id.* ¶¶ 120–176.)  In Count

IV, Fletcher alleges that all Defendants were grossly negligent in how they handled the risk to her safety.  (*Id.* ¶¶ 177–195.)

As an initial matter, Fletcher brings her claims against all Defendants both in their official and individual capacities.  (Am. Compl. ¶ 14.)  "[A] suit against a state official in his or her official capacity . . . is no different from a suit against the State itself."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  It is well established that "§ 1983 suits by individuals against a state for money damages are barred by the state sovereign immunity embodied in the Eleventh Amendment."  *Gaines v. Balt. Police Dep't*, 657 F. Supp. 3d 708, 749 (D. Md. 2023).  Any state law claims brought against the Defendants in their official capacity, regardless of the relief sought, is likewise barred by the Eleventh Amendment.  *See Harker v. State Use Indus.*, 990 F.2d 131, 132 n.1 (4th Cir. 1993).

Fletcher alleges that all Defendants, at all relevant times, were employees of the Virginia Department of Corrections ("VDOC").  (Am. Compl. ¶¶ 7–13.)  VDOC is an executive agency of the Commonwealth of Virginia.  *See* Va. Code. Ann. § 53.1-8.  All Defendants, then, were employees of the Commonwealth of Virginia at the relevant times, and Fletcher's § 1983 claims and state law claims for compensatory and punitive damages against them in their official capacities cannot lie.  The court will proceed to analyze her claims against Defendants in their individual capacities.

## A.  § 1983 Claims Against the Officials (Count I)

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments."  U.S. Const. amend. VIII.  This prohibition imposes certain duties on prison

officials.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Among these is the duty to protect inmates from violence at the hands of other inmates.  *Id.* at 833.  But "not every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety."  *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (cleaned up) (quoting *Farmer*, 511 U.S. at 834).

To state an Eighth Amendment claim for failure to protect, an inmate must allege facts sufficient to satisfy two elements, one objective and one subjective.  *King v. Riley*, 76 F.4th 259, 264 (4th Cir. 2023); *Gomez v. Davis*, 7:20-cv-00726, 2022 WL 777064, at *4 (W.D. Va. Mar. 11, 2022).  First, an inmate must have suffered a "serious deprivation of [her] rights in the form of a 'serious or significant physical or emotional injury.'"  *Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014) (quoting *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010)).  Second, the prison official must have had a "sufficiently culpable state of mind," which, in this context, is one of "deliberate indifference to inmate health or safety."  *Farmer*, 511 U.S. at 834 (cleaned up).

Deliberate indifference is a "demanding standard," *Mullen v. Town of Sunset Beach, N.C.*, 175 F.4th 466, 472 (4th Cir. 2026), which requires the prison official to "know[] of and disregard[] an excessive risk to inmate health or safety," *Farmer*, 511 U.S. at 837.  The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.*  Accordingly, an official's "failure to alleviate a significant risk that he should have perceived but did not" cannot form the basis of an Eighth Amendment claim.  *Id.* at 838.

Fletcher alleges that the Officials "had actual knowledge that Hargrave and Daniels posed a substantial risk of serious harm to [Fletcher]," that they were deliberately indifferent to this risk to Fletcher's safety in violation of the Eighth Amendment, and that this indifference resulted in actual harm to Fletcher.  (Am. Compl. ¶¶ 96, 109–11.)

1.  <u>Before July 20, 2023</u>

To the extent that Fletcher claims the Officials failed to protect her from the alleged rape in July 2023, she does not allege sufficient facts to support her claims that they were aware that her safety was at risk.  Fletcher only alleges that, before the alleged rape, the Officials "knew that Plaintiff was a repeated target of gang violence" and "knew that Hargrave and Daniels had a history of working together to violently assault and otherwise terrorize inmates." (Am. Compl. ¶¶ 29–30.)  But with no further details supporting these factual allegations, these conclusory statements are insufficient to suggest the Officials' knowledge of the risk.  Fletcher never alleges, for example, that she or another inmate had ever told any of the Officials about prior "gang violence" or Hargrave and Daniels's "history" or that any of them had ever previously acknowledged such.  *Cf. Raynor v. Pugh*, 817 F.3d 123, 129 (4th Cir. 2016) (finding sufficient for establishing deliberate indifference an allegation that an inmate told the defendant official that he was going to attack the plaintiff).  Accordingly, Fletcher does not sufficiently allege that the Officials "kn[ew] of and disregard[ed] an excessive risk to [her] health or safety" before July 20, 2023.  *Farmer*, 511 U.S. at 837.

2.  Between July 20, 2023 and September 24, 2023

    i.  *Defendant Barbour*

Fletcher alleges that she reported the alleged rape to Barbour "soon after it occurred."[2]
(Am. Compl. ¶¶ 40.)  Rather than taking any action, Barbour purportedly told Fletcher that
"God would give her justice and to keep her head held high."  (*Id.*)  Fletcher alleges that
Barbour was required to report the rape allegations, but failed to, and that she "knowingly
allowed Hargrave and Daniels to be around [Fletcher] even though [Fletcher] had expressed
reasonable fear of the inmates who violently raped her."  (*Id.* ¶¶ 41, 50.)  "As a result" of
Barbour's inaction, "Hargrave and Daniels were left alone, unsupervised, and unmonitored
with [Fletcher] in their shared housing unit for a period of time sufficient to give [them] an
opportunity to break [Fletcher's] left hand on September 24, 2023."  (*Id.* ¶ 51.)

At this stage, Defendants do not contest that Fletcher's broken hand constitutes a
"serious or significant physical or emotional injury" satisfying the "serious deprivation" prong
of the failure to protect analysis.  (*See* Defs.' Br. at 16.)  Fletcher thus satisfies the objective
element of her failure to protect claim.

As to the subjective element, Fletcher sufficiently alleges that Barbour was deliberately
indifferent to a substantial risk to her safety.  Fletcher claims that she told Barbour that she
was raped by the two inmates and that she "expressed reasonable fear of" Hargrave and
Daniels to Barbour.  (Am. Compl. ¶¶ 40, 50.)  Fletcher's allegations suffice, then, to show

---

[2] At this stage, the court infers that Fletcher's allegation that she reported the rape "soon after it occurred" indicates that
she reported it before September 24, 2023.  *See Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (requiring the
court to, at the motion to dismiss stage, "draw all reasonable inferences in favor of the plaintiff").

Barbour was "aware of facts from which the inference could be drawn that a substantial risk of serious harm [to Fletcher] exist[ed]." *Farmer*, 511 U.S. at 837. To state a claim for deliberate indifference, Fletcher must also sufficiently allege that Barbour had actually "draw[n] the inference." *Id.*

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact" that can be proven through direct or circumstantial evidence. *Id.* at 842; *Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016). And a "factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. An official need not "inten[d] to cause the harm risked." *Anderson v. Kingsley*, 877 F.3d 539, 545 (4th Cir. 2017).

At this stage, Fletcher alleges sufficient facts to state a claim. Drawing all inferences in favor of Fletcher, as the court must at this stage, the fact that Fletcher was housed in the same unit as Hargrave and Daniels after they raped her may be so "obvious" of a risk to her safety that Barbour "must have known about it." *Farmer*, 511 U.S. at 842 (cleaned up). In fact, Fletcher maintains she told Barbour specifically who had raped her and that she feared further attacks from these specific inmates. *Cf. Lassiter v. Blevins*, No. 7:23-cv-00650, 2024 WL 4831881, at *3 (W.D. Va. Nov. 19, 2024) (finding that an inmate saying "'I fear for my life', without more detail, does not provide the kind of information needed for an official to respond to a threat"); *Watkins v. Maryland*, Civ. No. CBB-17-2893, 2018 WL 3448162, at *4 (D. Md. July 17, 2018) (dismissing Plaintiff's failure to protect claim because he did not allege that prior to the assault he had informed prison officials "that [a specific inmate] was his enemy

or that he feared for his safety"). Additionally, Barbour's statement to Fletcher that "God would give her justice and to keep her head held high," (Am. Compl. ¶ 40), indicates that Barbour believed Fletcher was wronged.

At this stage, Fletcher's allegations that Barbour had actual knowledge of the risk created by these specific inmates and yet did nothing, (*see* Am. Compl. ¶ 41), are sufficient to allege that Barbour subjectively perceived a risk to Fletcher's safety and consciously disregarded it. "Prison officials may not simply bury their heads in the sand and thereby skirt liability." *Makdessi*, 789 F.3d at 133. Accordingly, the court finds that Fletcher has stated a claim under the Eighth Amendment against Barbour for Barbour's conduct after Fletcher reported her rape and before Fletcher's hand was broken.

### ii. Other Officials

To the extent that Fletcher alleges Eighth Amendment violations by any Officials besides Barbour before Fletcher's hand was broken, Fletcher does not allege any facts to suggest that those specific Officials were aware of the alleged rape or of any risk to Fletcher's safety from Hargrave and Daniels before September 24, 2023. As explained above, Fletcher only alleges conclusory statements as to the Officials' knowledge of any risk before the alleged rape. And Fletcher does not allege that she told anyone else besides Barbour about the rape between July 20, 2023, and September 24, 2023. Accordingly, Fletcher does not sufficiently allege that the other Officials actually "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety" before September 24, 2023. *Farmer*, 511 U.S. at 837.

3. <u>After September 24, 2023</u>

Fletcher alleges that after she reported the rape and broken hand to the Officials, they failed to sufficiently protect her from retaliation by Hargrave and Daniels. (Am. Compl. ¶ 58.) To state a claim against any of the Officials, Fletcher must sufficiently allege that each of them, through their *own individual actions*, has violated the Constitution. *King*, 76 F.4th at 269 (quoting *Iqbal*, 556 U.S. at 677) (emphasis added). That is, Fletcher needs to allege factual details about how each defendant personally acted in violation of her rights. *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017). She fails to do so.

Fletcher alleges that Defendants did not follow the Prison Rape Elimination Act's ("PREA") mandates to investigate her rape allegations and to protect her from retaliation. (*See, e.g.*, Am. Compl. ¶¶ 49, 58.) But these alleged PREA violations are not independently actionable, as there is "no basis in law for a private cause of action under 42 U.S.C. § 1983 to enforce a PREA violation." *Moore v. Fleming*, No. 7:23-cv-00497, 2025 WL 899331, at *2 (W.D. Va. Mar. 24, 2025) (cleaned up) (quoting *Bracy v. Tully*, 1:22-cv-827, 2022 WL 3229325, at *3 (E.D. Va. Aug. 10, 2022)).

Additionally, Fletcher alleges throughout her amended complaint that the Officials failed to properly investigate her complaints and violated VDOC procedures. (*See, e.g.*, Am. Compl. ¶¶ 45, 49, 103–04.) She also broadly alleges that the Officials failed to enforce the provision in the Keep Separate policy that directed staff to "always keep inmates approved for Keep Separate status separated" and that staff "should not place them in the same institution." (*Id.* ¶ 62.) While Fletcher's allegations are troubling, "knowingly violating a prison policy does

not amount to deliberate indifference," *King*, 76 F.4th at 267, and "[s]tate officials' failure to abide by state procedural regulations is . . . not actionable under § 1983," *Chatman v. Clarke*, No. 7:16-cv-00509, 2016 WL 7480426, at *3 (W.D. Va. Dec. 29, 2016) (citing *Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990)); *see also Williams v. Allen*, No. 7:24-cv-00828, 2026 WL 861069, at *3 (W.D. Va. Mar. 30, 2026) ("It is well-established that violations of deadlines or procedures set forth in VDOC disciplinary regulations do not rise to the level of a federal constitutional violation actionable under § 1983." (cleaned up)).  Similarly, a prison official's failure to investigate an inmate's complaint does not raise an Eighth Amendment claim.  *See Collins v. McCargo*, 3:25-cv-00019, 2025 WL 3006744, at *3 (E.D. Va. Oct. 27, 2025) ("[N]umerous courts have concluded that the failure to investigate a complaint or grievance fails to state a claim of constitutional dimension."); *Roberson v. Davis*, No. 7:20-cv-00280, 2020 WL 7586912, at *4 (W.D. Va. Dec. 22, 2020) (collecting cases).  To the extent that Count I is based on claims that Defendants failed to follow the PREA, failed to investigate Fletcher's complaints, or failed to follow VDOC operating procedures, Fletcher thus fails to state a claim.

Beyond failures to investigate and follow operating procedures, Fletcher's individual allegations against Jackson stem from disagreements with her responses to Fletcher's written grievances.  (*See* Am. Compl. ¶¶ 64–65, 69–71, 76–77, 79–80, 83–84.)  These allegations do not give rise to an Eighth Amendment claim.  *See, e.g.*, *Johnson v. Clarke*, No. 7:20-cv-00717, 2021 WL 1536585, at *2 (W.D. Va. Apr. 19, 2021) (noting that "it is well-established that a response to a grievance (or failure to respond to a grievance), without more, does not give rise to a constitutional claim").  On Fletcher's own account, Jackson reviewed and responded to

- 14 -

Fletcher's written complaints, noted that a Keep Separate Order was in place, passed along relevant information to an investigating agent, and explained that "all of the necessary steps have been put in place to keep you separated from inmate Hargrave." (*See* Am. Compl. ¶¶ 64–65, 69–71, 76–77, 79–80, 83–84 (cleaned up).) Fletcher does not provide sufficient factual allegations to support the claim that Jackson's grievance responses constituted deliberate indifference.

Beyond failures to investigate and follow operating procedures, Fletcher alleges that Woodson turned off her body-worn camera when Fletcher told her about the rape and subsequent attack. (*Id.* ¶ 43). This allegation does not give rise to an Eighth Amendment claim. *See, e.g.*, *Sims v. Mondul*, No. 7:25-cv-00349, 2026 WL 323835, at *4 n.5 (W.D. Va. Feb. 6, 2026) (explaining that even the purposeful deletion of video footage "is not actionable under § 1983"). Fletcher alleges that when Woodson heard about the rape allegation from another inmate, she "immediately requested [that Fletcher] come up in person and tell her the story herself," and then, *after* allegedly turning off the body camera, still "immediately walked [Fletcher] to the office of Defendant Jackson, the head of investigations at FCCW" so Fletcher could tell him the story. (Am. Compl. ¶¶ 43–44.) Fletcher does not provide sufficient factual allegations to suggest that Woodson turning off her body camera constituted deliberate indifference.

Fletcher only alleges conduct or wrongdoing by Hucks, Thomas, Elliott, or Jamerson in a broad and conclusory fashion. She generally alleges that these Officials "did not sufficiently implement the [VDOC] Operating Procedure[s] and other relevant policies,

procedures, and customs in place to protect Plaintiff from retaliation by Hargrave and Daniels, *as detailed extensively below.*" (Am. Compl. ¶ 58 (emphasis added).) But the allegations that follow provide scarce detail as to any individual wrongdoing by these four Defendants. Fletcher does not allege any individual conduct by Hucks, Elliott, or Jamerson throughout the rest of the amended complaint. She only mentions that she reported "[r]etaliation efforts" to them. (*Id.* ¶ 108.) Similarly, Fletcher's only additional references to Thomas are that Fletcher reported retaliation to him.[3] (*Id.* ¶¶ 63, 108.)

Fletcher cannot state a deliberate indifference claim against these four Defendants relying solely on collective and general allegations. *See Rice v. Adams*, 172 F.4th 428, 432 (4th Cir. 2026) ("To allege that an officer acted with deliberate indifference, the complaint must make defendant-specific allegations."). Fletcher's allegations are not "particular enough to allow one to infer what each defendant did and knew." *Id.* Defendant-specific allegations are especially critical for Eighth Amendment claims because of the subjective element that the prison official must have acted with a "sufficiently culpable state of mind." *Price v. White*, No. 5:23-cv-00010, 2024 WL 209186, at *5 (W.D. Va. Jan. 19, 2024). "[B]oilerplate conclusion[s]—lacking defendant specificity and factual support—do[] not state claim." *King*, 76 F.4th at 269.

---

[3] One of Fletcher's written grievances quoted in the amended complaint mentions that—after Fletcher reported seeing Hargrave outside—"P. Thomas" made Fletcher wait ten minutes while Thomas "walked the entire boulevard," but "never addressed" Hargrave. (Am. Compl. ¶ 77.) If "P. Thomas" in fact refers to Defendant Andre J. Thomas, this allegation appears to address the inadequacy of Jackson's grievance responses, rather than individual wrongdoing by Thomas. Regardless, this allegation is still insufficient to state a claim for deliberate indifference.

Accordingly, Fletcher does not state a claim under § 1983 against Jackson, Thomas, Hucks, Elliott, Woodson, or Jamerson. She does state a claim against Barbour for her conduct between Fletcher's report of rape to her and September 24, 2023. The court will dismiss Count I as to Jackson, Thomas, Hucks, Elliott, Woodson, and Jamerson.

**B. § 1983 Claims Against Aldridge (Counts II and III)**

In Counts II and III, Fletcher alleges that Defendant Aldridge, the Warden of FCWW, failed to protect Plaintiff's safety and to adequately train his employees at FCWW. (*See* Am. Compl. ¶¶ 120-76.) Fletcher appears to claim that Aldridge is liable both directly and in his supervisory capacity.

1. Direct Liability

To the extent that Fletcher alleges that Aldridge is directly liable under the Eighth Amendment for his conduct before the alleged rape or broken hand, she does not sufficiently allege that Aldridge "kn[ew] of and disregard[ed] an excessive risk to [her] health or safety" before either of those events. *Farmer*, 511 U.S. at 837. Fletcher's first mention of Aldridge in her amended complaint is in reference to events that took place after the alleged rape and the broken hand. (Am. Compl. ¶ 64.) In other words, she does not allege any facts to suggest Aldridge had any actual or constructive knowledge of a risk to her safety before September 24, 2023. Without alleging knowledge of the risk, she cannot plausibly allege that Aldridge disregarded that risk. *See Koon v. North Carolina*, 50 F.4th 398, 406 (4th Cir. 2022) ("Deliberate indifference requires a deliberate or conscious choice to ignore something. . . . [a]n official must know of the dangers to federal rights and nonetheless disregard them." (cleaned up)).

- 17 -

To the extent that Fletcher alleges that Aldridge is directly liable under the Eighth Amendment for his conduct after September 24, she still fails to state a claim. Her allegations as to Aldridge's direct conduct focus on disagreements with his responses to her written grievances. (*See id.* ¶¶ 64, 67, 73, 78, 79, 86.) But Aldridge's individual actions—denying administrative grievances—do not give rise to a constitutional claim. *See Brown v. Va. Dep't Corr.*, No. 6:07-cv-00033, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009) ("[T]here is no liability under § 1983 for a prison administrator's response to a grievance or appeal."); *Johnson*, 2021 WL 1536585, at *2 (noting that "it is well-established that a response to a grievance (or failure to respond to a grievance), without more, does not give rise to a constitutional claim"). Fletcher fails to allege any other facts that plausibly suggest Aldridge directly "kn[ew] of and disregard[ed] an excessive risk to [her] health or safety" after September 24, 2023. *Farmer*, 511 U.S. at 837.

2. <u>Supervisory Liability</u>

In limited circumstances, state officials may be held liable under § 1983 "for the constitutional injuries inflicted by their subordinates." *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994)). Supervisory liability "is not premised on respondeat superior, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984) (citation omitted); *see also Younger v. Crowder*, 79 F.4th 373, 381 n.12 (4th Cir. 2023) (explaining that the term "supervisory liability" is "a misnomer" because liability under § 1983

is limited to a state official's own misconduct). To that end, a plaintiff who alleges a § 1983 claim based on supervisory liability must show three elements: (1) "that the supervisor had actual or constructive knowledge that her subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) "that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) "that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (cleaned up); *see Shaw*, 13 F.3d at 799.

Even accepting Fletcher's factual assertions as true, she fails to make the required showing. She makes only conclusory allegations that Aldridge had actual or constructive knowledge that his staff was engaged in conduct that posed a risk of constitutional injury to Fletcher. (*See* Am. Compl. ¶¶ 126–129, 156.) But, as stated above, Fletcher does not sufficiently allege that any FCCW staff, besides Defendant Barbour, engaged in conduct that posed a risk of constitutional injury to her. And Fletcher does not allege that Aldridge had any knowledge, actual or constructive, of Barbour's failure to act on Fletcher's report of rape before her hand was broken.

Indeed, Fletcher alleges that Aldridge believed the following: (1) a Keep Separate order was in place; (2) staff were briefed on the order; and (3) staff were placed in general population areas and at Fletcher's work placement to ensure her safety. (*See, e.g.*, Am. Compl. ¶¶ 59, 63–64, 78–79.) Aldridge's response as alleged by Fletcher, then, was not "so inadequate as to

- 19 -

show deliberate indifference to or tacit authorization of the alleged offensive practices." *Wilkins*, 751 F.3d at 226.

      3.  <u>Failure to Train</u>

Finally, Fletcher does not sufficiently allege a "failure to train" claim against Aldridge. (*See, e.g.*, Am. Compl. ¶ 155.)  To state a claim for failure to train, a plaintiff must show: "(1) that the subordinates actually violated the plaintiff's constitutional or statutory rights; (2) that the supervisor failed to train properly the subordinates thus illustrating a 'deliberate indifference' to the rights of the persons with whom the subordinates come into contact; and (3) that this failure to train actually caused the subordinates to violate the plaintiff's rights." *Gallimore v. Henrico Cnty. Sch. Bd.*, 38 F. Supp. 3d 721, 726 (E.D. Va. 2014) (cleaned up).  As stated above, Fletcher does not sufficiently allege that any of the FCCW staff besides Barbour violated her constitutional rights.  The complaint is devoid of any allegation to support an argument that Aldridge failed to train Barbour adequately or that any inadequate training led to Barbour's response to Fletcher's report of her rape.  A failure to train claim against Aldridge cannot lie, and the court will dismiss Counts II and III.

### C. Gross Negligence Claims Against All Defendants (Count IV)

Fletcher also brings a single count under Virginia tort law for gross negligence against all Defendants.  (Am. Compl. ¶¶ 177–195.)  She claims that Defendants breached their duty of care owed to her by failing to protect her from Hargrave and Daniels, failing to follow prison policies, and failing to "provide sufficient security, staffing, and training" to prison officials.  (*Id.* ¶ 188.)

1. <u>Defendants Jackson, Thomas, Hucks, Elliott, Woodson, Jamerson, and Aldridge</u>

Because the court will dismiss Fletcher's federal claims against Jackson, Thomas, Hucks, Elliott, Woodson, Jamerson, and Aldridge, the court will exercise its discretion to decline supplemental jurisdiction over her state-law claim against them.[4]

A district court has "wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024) (quoting *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995)). In deciding whether to exercise supplemental jurisdiction over a state-law claim in this scenario, the court weighs multiple factors, including "judicial economy, convenience, fairness, and comity." *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). "Generally, when a district court dismisses all federal claims in the early stages of litigation . . . it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice." *Id.* (cleaned up).

Here, the court concludes that the relevant factors support dismissal, as Virginia state courts are best suited to hear Fletcher's state-law claim challenging Defendants' conduct at FCCW. Accordingly, the court will dismiss Count IV as to Jackson, Thomas, Hucks, Elliott, Woodson, Jamerson, and Aldridge.[5]

---

[4] Based on the allegations in the complaint, Fletcher and all Defendants are citizens of Virginia for diversity purposes, (*see* Am. Compl. ¶¶ 4, 7–13), so the court cannot exercise diversity jurisdiction over her state-law claims. *See* 28 U.S.C. § 1332(a)(1).

[5] To the extent that Fletcher alleges that VDOC or FCCW are vicariously liable for gross negligence, (*see* Am. Compl. ¶¶ 178, 190), that claim must fail because VDOC and FCWW are not defendants here.

2.  Defendant Barbour

Since Fletcher states a federal claim against Barbour, the court will exercise supplemental jurisdiction over Fletcher's state law claim against her.  Defendants argue that Count IV should be dismissed primarily because it is barred by the statute of limitations. (Defs.' Br. at 39–40.)

Virginia Code § 8.01-243.2 provides that any "person confined in a state or local correctional facility shall bring . . . any personal action relating to the conditions of [her] confinement . . . within *one year* after cause of action accrues or within six months after all administrative remedies are exhausted, whichever occurs later."  Va. Code Ann. § 8.01-243.2 (emphasis added).  "In deciding a motion to dismiss based on the statute of limitations, the Court should only grant the motion if it clearly appears on the face of the Complaint that Plaintiffs' claims are time-barred."  *MSP Recovery Claims, Series LLC v. Lundbeck LLC*, 664 F. Supp. 3d 635, 652 (E.D. Va. 2023) (citing *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)).  And in Virginia, "a cause of action for personal injury related to conditions of confinement in a state or local correctional facility accrues on, and the statute of limitations period begins to run from, the date the injury is sustained."  *Lucas v. Woody*, 756 S.E.2d 447, 450 (Va. 2014).

It is clear on the face of the amended complaint that Fletcher's gross negligence claim against Barbour is time-barred.  While Barbour's response to Fletcher's initial report that she was raped may arguably meet the criteria for gross negligence, Fletcher's alleged injury suffered because of that conduct—her broken hand—occurred on September 24, 2023, (Am. Compl.

¶ 42), which is well over one year before Fletcher filed suit in July 2025, (Dkt. 1). Any gross negligence claim against Barbour for her response to Fletcher's report that she was raped is therefore time-barred under Virginia Code § 8.01-243.2. Barbour does not allege any reports to, interactions with, or conduct by Barbour after September 24, 2023. Accordingly, the court will dismiss Count IV as to Barbour.

## IV.    Conclusion

For all these reasons, the court will grant in part and deny in part Defendants' motion. (Dkt. 13). The motion will be denied on Count I against Defendant Barbour for her conduct between Fletcher's report of rape to her and September 24, 2023. The motion will be granted as to the remaining Defendants on Count I and as to all relevant Defendants on Counts II, III, and IV. Those claims will be dismissed without prejudice. Fletcher will be granted leave to file an amended complaint within 21 days.

An appropriate Order will issue.

**ENTERED** this _8th_ day of June, 2026.

_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE